NOTICE

Decision filed 07/08/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260317-U

NO. 5-26-0317

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 25-CF-100 |
| | ) | |
| DANNY W. COCKERELL, | ) | Honorable |
| | ) | Joshua C. Morrison, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Bollinger and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse and remand the detention order where the specific facts of the case, as presented by the State, did not support a finding of dangerousness as required for defendant's pretrial detention.

¶ 2    Defendant, Danny W. Cockerell, appeals the Clinton County circuit court's pretrial detention orders. For the following reasons, we reverse and remand with directions.

¶ 3                          I. BACKGROUND

¶ 4    On May 16, 2025, defendant was charged with methamphetamine trafficking, unlawful possession of methamphetamine with intent to deliver, unlawful possession of methamphetamine, and unlawful possession of drug paraphernalia. 720 ILCS 646/56(a), 55(a)(1), 60(a); 720 ILCS 600/3.5(a) (West 2024). The State filed a verified petition to deny defendant pretrial release the same day. The petition alleged that defendant was charged with a forcible felony that required a

1

sentence of imprisonment based on his criminal history, and he posed a real and present threat to any person or persons or the community. 725 ILCS 5/110-6.1(a)(1) (West 2024).

¶ 5 A detention hearing was held on May 16, 2025. The State proceeded by proffer, stating that on May 14, 2025, Trooper Becherer conducted a traffic stop of a vehicle driven by Ryan Staton, and defendant was a passenger. Defendant was the registered owner of the vehicle. Staton had a revoked driver's license and several pending warrants. Officer Robinson arrived and conducted a free air sniff of the vehicle with his canine partner, who alerted to the odor of an illegal narcotic. A search was conducted and officers located approximately three pounds, specifically 1,340 grams, of a substance that field tested positive for methamphetamine. Staton told officers that he was a friend of defendant, and that defendant asked Staton to drive to St. Louis, Missouri, to meet a man to purchase methamphetamine. Defendant paid Staton $100 to drive, and "was also going to be given some methamphetamine as well." Staton said that defendant provided him with methamphetamine for doing jobs like cutting the grass.

¶ 6 The State said that defendant was charged with trafficking methamphetamine into the state of Illinois, and the amount purchased was "not for personal use." The State argued that the methamphetamine posed a severe risk to the community at large, and no combination of conditions would ensure defendant's compliance or prevent him from possessing methamphetamine. The State asked that defendant be detained pending trial.

¶ 7 Defense counsel first asserted that defendant believed Staton's statements were "self-serving." Counsel proffered that defendant drove a semitruck and was employed out of Flora, Illinois. Defendant's mother and sister lived in the area, and he had lived in the area for over 30 years. Defendant had several health issues, stating that he could hardly walk, had chronic obstructive pulmonary disease (COPD), and prostate cancer.

2

¶ 8    The trial court found that the State met its burden of proving that the presumption was great that defendant committed a detainable offense, and that his release would pose a real and present threat "to the safety of the community based on the amount of methamphetamine that was allegedly trafficked into the state, that being more than 900 grams." Further, no conditions would mitigate the threat because no conditions could prohibit defendant from possessing, distributing, or trafficking additional drugs into the community. The trial court entered a written order the same day, stating that conditions would not be sufficient due to "amount of methamphetamine trafficked into the state. No conditions that prohibit possession, distribute, or traffick [*sic*] meth."

¶ 9    On September 26, 2025, defendant had a subsequent court appearance. Defense counsel asked the trial court to "revisit" pretrial detention. Counsel stated that defendant was 70 years old and had a 91-year-old mother in poor health. Defendant's health also suffered, stating that he had cancer and COPD, but defendant did not have access to all his medical devices in jail. Defendant had no history of violence. He was a passenger during the traffic stop and was cooperative with officers. Counsel asked for release with conditions such as an ankle monitor and home confinement. The State said that there was no substantial change in circumstances and asked for the motion to be denied. The trial court ordered continued detention.

¶ 10   On November 21, 2025, defendant had a subsequent court appearance. Defense counsel provided the same information from the September 26, 2025, hearing, and stated that defendant was not receiving his portable oxygen at the jail. Further, defendant was treated for kidney stones and had a stent placed. His kidney issues would require additional surgeries and stents. Defense counsel cited to *People v. Nicholson*, 2024 IL App (2d) 240257-U, as persuasive authority. In *Nicholson*, the defendant trafficked over 900 grams of methamphetamine into the State from Michigan. The defendant was detained on the dangerousness standard based on the weight of the

3

methamphetamine. The appellate court reversed this finding because the weight of the drugs was not enough to prove dangerousness. Defense counsel requested that the trial court follow the decision in *Nicholson* due to the factual similarities. The State provided the initial factual proffer again and defendant's criminal history, which included multiple drug related offenses from 1991 to 2016. The State argued that nothing had changed in the case, and *Nicholson* was only persuasive. Defense counsel responded, stating that detention should not be based off the offense alone, as it is a two-prong test to order a defendant detained. The trial court ordered continued detention.

¶ 11    Defendant filed a motion for relief and immediate release on December 22, 2025. The motion for relief stated that the trial court erred in granting the State's petition because it failed to meet its burden of proof in that the trial court failed to fully consider defendant's ties to the community, that he was a life-long resident of southern Illinois, his willingness to abide by any terms of release, his employment opportunities, lack of violent criminal history, his health, and that no specific victim was named or any facts presented regarding defendant's danger to the community.

¶ 12    On January 2, 2026, the trial court held a hearing on defendant's motion for relief. Defense counsel stated that since the last hearing, defendant continued to face issues with his health. He had additional surgeries scheduled and continued to suffer from health complications. Defense counsel argued that defendant was only detained because of the weight of the methamphetamine and no other factors. He did not have a violent criminal history. Further, Staton, the driver of the vehicle, pleaded guilty to possession of methamphetamine, which strengthened defendant's case. Defense counsel asked for defendant's release with conditions. Defendant spoke on his own behalf, stating that his health had "gone to heck" and he had multiple health issues from the jail. Upon inquiry from the trial court, defense counsel stated that defendant would comply with any

4

conditions, and that he should not be detained based on the weight of the methamphetamine alone, as the statute required additional elements.

¶ 13    The State responded, again proffering defendant's criminal history involving drugs and the sentences he received. The jail was also required to address any medical issues he had. The State asked for the trial court to deny the motion. The trial court ordered continued detention.

¶ 14    During a subsequent appearance on January 30, 2026, defense counsel again provided the trial court with an update on defendant's health. Defendant's health continued to decline while he was in jail for both his kidney issues and cancer treatment. Counsel asked for defendant's release with conditions and to obtain additional treatment outside of jail. The trial court ordered defendant's continued detention.

¶ 15    Defendant filed a second motion for relief and immediate release on March 27, 2026. The motion contained the same information as the initial motion and included the additional hearing dates for the trial court's review. The matter proceeded to a hearing on the same day. Defense counsel stood on previous motions and arguments to the court about defendant's health, and asked for his release with conditions. The State said that there was no change in circumstances and asked the trial court to deny the motion for relief. The trial court denied the motion.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant appealed, including in his notice that he appeals the following hearings: September 26, 2025, November 21, 2025, January 2, 2026, January 30, 2026, and March 27, 2026. We initially note that defendant did not include the May 16, 2025, initial detention finding in his notice of appeal, and his memorandum on appeal focuses on the subsequent hearings. However, we find the initial detention order to be dispositive in this case, and as such, we will consider it on review. See *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435-36 (1979) (an unspecified

5

judgment is reviewable if it is a "step in the procedural progression leading" to the judgment specified in the notice of appeal).

¶ 18    On appeal, defendant argues that the State failed to prove that he posed a present threat to the community or that pretrial release conditions could not mitigate any purported danger. Defendant and the State both argue on appeal whether additional evidence or a change in circumstances was presented and required at subsequent appearances and the motion for relief hearings. We need not address any issues regarding additional evidence or a change in circumstances presented by either party at the trial court level, as our finding is based upon the initial detention hearing and written order.

¶ 19    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 20    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

"[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense,

6

that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7. See 725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 21   Defendant argues that the State failed to prove by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

7

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 22    Defendant argues that the State failed to prove a real and present threat because it proffered no evidence of a specific threat of harm to a person or society upon release. See *Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17. We agree with defendant that *Nicholson* is instructive in the present case. The defendant in *Nicholson* was charged with trafficking 1020 grams of methamphetamine into Illinois, and the trial court detained him for the "quantity of these drugs, *** over a thousand grams of methamphetamine." (Internal quotation marks omitted). *Id.* ¶ 9. The appellate court reversed pretrial detention in *Nicholson*, finding,

> "[B]y basing its dangerousness finding solely on defendant's transport of a certain weight of methamphetamine across state lines, the court erroneously 'substituted a finding that the proof was evident or the presumption great that defendant committed the alleged offense for a finding that defendant['s] release posed a real and present threat to the community.' " *Id.* ¶ 17 (quoting *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 18).

¶ 23    We have conducted our own independent review of the proffered evidence and the relevant factors. Defendant was not charged with a crime of violence, involving a weapon, or a sex offense. 725 ILCS 5/110-6.1(g)(1) (West 2024). Defendant's history was not indicative of violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(2). While defendant did have previous convictions, none of them involved violence. The State did not identify any specific victims to whom defendant posed a threat. *Id.* § 110-6.1(g)(3). Defendant's physical condition also should have been considered by the trial court, as he was 70 years old and in failing health, requiring multiple health treatments and surgeries. *Id.* § 110-6.1(g)(5). The State did not present any evidence that defendant possessed or had access to weapons. *Id.* § 110-6.1(g)(7). Further, he was not on probation at the time of the offense. *Id.* § 110-6.1(8).

9

¶ 24     Despite all these factors, the trial court still detained defendant. In its written order, the trial court directly stated that his detention was based on the "amount of methamphetamine trafficked into the state." This conduct was inherent from the trafficking charge. 720 ILCS 646/56(a) ("[A]ny person who knowingly brings, or causes to be brought, into this State methamphetamine *** for the purpose of manufacture or delivery of methamphetamine or with the intent to manufacture or deliver methamphetamine is guilty of methamphetamine trafficking."). The trial court focused on the weight of the methamphetamine brought into the State, over 900 grams, which was the highest charging category available. "However, had the legislature determined that possession with intent to deliver more than 900 grams of methamphetamine was an offense requiring automatic detention, it would have said so." *Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17.

¶ 25     Specific evidence of dangerousness *must* be presented and considered, aside from a recitation of the charges a defendant faces. *Stock*, 2023 IL App (1st) 231753, ¶ 18 ("the bare allegations" of an offense are not sufficient to establish a real and present threat). The State did not present any facts or evidence outside of the elements of the offense itself. The trial court based its detention finding on the "amount of methamphetamine trafficked into the state," not based upon factors enumerated in the statute to prove a real and present threat. Thus, it was error for the trial court to find that defendant posed a real and present threat based on the applicable factors and specific facts of this case. We reverse the trial court's detention order and remand so the trial court may order appropriate conditions of release.

¶ 26                                    III. CONCLUSION

¶ 27     We reverse the detention order of Clinton County and remand for further proceedings consistent with this order.

10

¶ 28    Reversed and remanded with directions.